# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3684

_____

| | | |
|---|---|---|
| Daniel Watkins; Cynthia Watkins, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Terry Lundell; Stephanie Lundell, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  November 20, 1998

Filed:  February 26, 1999

_____

Before BEAM, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Terry and Stephanie Lundell (the Lundells) appeal the district court's partial denial of their motions to set aside default judgment. The district court set aside a portion of the default judgment, under Federal Rule of Civil Procedure 60(b)(6), in order to correct a computation of actual damages and to reduce punitive damages. The Lundells argue that the entire default judgment should be set aside. They contend, *inter alia*, that the district court erred in awarding punitive damages. We affirm in part and reverse in part.

## I.    BACKGROUND

Terry Lundell, a resident of Tucson, Arizona, contracted to purchase approximately 5,381 acres of farmland in Iowa on March 26, 1990.  He in turn advertised the property for sale in California where Daniel Watkins, a resident of Los Altos, California, contacted Lundell and agreed to purchase the property.  As a down payment, Daniel Watkins delivered title and possession of a vintage Ferrari Testarossa, valued at $200,000.  Daniel Watkins also paid a $25,000 loan origination fee and $8,000 for an appraisal.  Terry Lundell accepted and sold the Ferrari but financial difficulties resulted in his failure to perform on his contract to purchase the Iowa property.  The property was eventually forfeited, and without the property, Terry Lundell could not fulfill his contract to sell the land to Daniel Watkins.  In 1992, Daniel Watkins and his wife, Cynthia Watkins (the Watkins), filed an action for breach of contract and fraud.

The Watkins' action was brought in the United States District Court for the Northern District of California, where it was referred for early mediation.  The mediation resulted in a "Mutual Release and Settlement Agreement" (the settlement) that provided for dismissal of the contract and fraud action contingent on certain terms.  The settlement required that Terry Lundell pay $25,000 to the Watkins within ten days, followed by three subsequent payments of $70,000 on November 1 of 1993, 1994, and 1995 with interest accruing on the unpaid balance at five percent.  Terry Lundell was also required to obtain a life insurance policy naming the Watkins as beneficiaries.  As security for the settlement, Terry Lundell provided a confession of judgment, to be filed in the event of default, and mortgages on two of his other properties.  His wife, Stephanie Lundell, signed the settlement as a guarantor.  Despite an extension of time, the Lundells never paid any amount, the life insurance policy was never obtained, and the property used as security turned out to be worthless.  After the Lundells defaulted on the settlement contract, the Watkins filed the confession of judgment.

On July 9, 1993, the Watkins brought the present action for breach of the settlement agreement and fraud in inducing the settlement. For reasons unknown and irrelevant here, this action was brought in the United States District Court for the Southern District of Iowa. The Lundells were personally served and read and understood the summons and complaint. Just before the expiration of time for filing an answer, Terry Lundell contacted an Iowa attorney concerning representation. The Iowa attorney, being informed that an answer was due, contacted opposing counsel and received an extension of time to answer. However, before accepting the representation, the Iowa attorney requested a retainer and documents relating to the circumstances giving rise to the lawsuit. Terry Lundell agreed that he would provide the retainer and documents but never contacted the Iowa attorney again. An answer was never filed.

Meanwhile, the Watkins attempted to collect on the confessed judgment from the first action in California, and while doing so were contacted by an Arizona attorney representing the Lundells. The Arizona attorney indicated that the Lundells were contemplating bankruptcy and were prepared to offer the Watkins a quitclaim deed to some property, with allegedly $10,000 in equity, a third-position deed of trust to some parcels of land, and an unsecured interest-free promissory note in the amount of $75,000. This offer was to be in settlement of all the Watkins' claims. The Watkins rejected the offer out-of-hand, and the Lundells made no further contact.

No answer having been filed, the Watkins moved for entry of default in the present action. Default was entered against the Lundells, and the action was referred to a magistrate judge for a determination of damages. The magistrate judge held a hearing, at which the Lundells were not present, and found that the Lundells had fraudulently induced the Watkins to settle and had deliberately decided not to defend the present action. Evidence provided by the Watkins estimated Terry Lundell's net worth to be approximately $11,000,000. The magistrate judge prepared a report and

recommendation calling for actual damages of $335,000 and punitive damages of $3,500,000 against the Lundells.

The district judge reviewed the record and adopted the magistrate judge's report and recommendation and entered default judgment on February 16, 1994. In June 1995, the Watkins filed the default judgment in Pima County, Arizona, whereupon the Lundells promptly filed the motions which are the subject of this appeal. On July 6, 1995, the Lundells moved to set aside the default judgment under Federal Rule of Civil Procedure 55(c), 60(b)(4), (5), and (6), by the ancillary remedy of a Bill of Review, and under the Soldiers' and Sailors' Civil Relief Act of 1940. See 50 U.S.C. §§ 501-591. The motions were referred to a magistrate judge for a report and recommendation.

The magistrate judge recommended that a portion of the default judgment be set aside and partial relief be granted under Federal Rule of Civil Procedure 60(b)(6). The report and recommendation concluded that actual damages should be reduced to $235,000 because of an error in calculation, and that punitive damages against Stephanie Lundell be reduced to $117,500 because of injustice. The magistrate judge did not recommend relief from the punitive damages awarded against Terry Lundell because Lundell's actions evidenced a pattern of fraud and deceit. Furthermore, Lundell withheld information necessary to make a more accurate determination of punitive damages. The district court adopted the report and recommendations in full, thus granting in part and denying in part the Lundells' motions to set aside default judgment.[1]

---

[1]The district court also denied the Lundells' subsequent motion to amend the findings of fact and judgment. This motion is nothing more than a second attempt to obtain relief and is subsumed in the Rule 60(b)(6) analysis.

## II.   DISCUSSION

We review a determination to set aside default judgment under Federal Rule of Civil Procedure 60(b) for abuse of discretion.  See Nucor Corp. v. Nebraska Pub. Power Dist., 999 F.2d 372, 374 (8th Cir. 1993).  Although the Lundells moved for relief from the default judgment under several theories, only Rule 60(b)(6) is applicable.[2]  A Rule 60(b)(6) motion, made within a "reasonable time," can provide relief from a judgment, including a default judgment, for "any other reason justifying relief from the operation of the judgment,"  Fed. R. Civ. P. 60(b)(6), thus allowing a district court to inject equity and revive an otherwise lifeless claim.  Cf. Klapprott v. United States, 335 U.S. 601, 614-15 (1949) (finding that Rule 60(b)(6) enables a court to "accomplish justice"); Hoover v. Valley West D M, 823 F.2d 227, 230 (8th Cir. 1987) (weighing the "equities involved" on a Rule 60(b) motion).

### A.   Reasonable Time

Before considering the merits of a Rule 60(b)(6) motion, we must consider whether the motion was made within a reasonable time.   What constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion.  See Federal Land Bank v. Cupples Bros., 889 F.2d 764, 767 (8th Cir. 1989).

---

[2]Parts (4) and (5) of Rule 60(b) are of no help to the Lundells as they provide relief when a judgment is void, satisfied, released, discharged or an underlying judgment upon which the instant judgment is based was reversed, vacated or should no longer have prospective application.  See Fed. R. Civ. P. 60(b)(4) & (5).  No such allegations are made and the district court properly disposed of those claims, leaving only Rule 60(b)(6). The district court also correctly dismissed claims for relief under Federal Rule of Civil Procedure 55(c), Bill of Review, and the Soldiers' and Sailors' Civil Relief Act.

We have considerable trepidation about whether the Lundells' Rule 60(b)(6) motion was made within a reasonable time since they allowed the default judgment to stand, without objection, for approximately seventeen months. Nevertheless, the district court did not address the issue and neither of the parties have raised it. In fact, when counsel for the Lundells was questioned at oral argument about how a district court could review this case under Rule 60(b)(6), he responded that "I found no objection to that procedure, and I thought that the court had exercised equitable powers and what I thought was appropriate judgment in the effort to seek overall fairness and justice."[3] From the total dearth of treatment on the issue of reasonable time, we conclude that it is not properly before us on appeal.

## B.    Exceptional Circumstances

The Watkins are content with the partial relief granted the Lundells by the district court. They do not argue that the partial relief was inappropriate, but seek only to uphold the district court's ruling. The Lundells, however, contend that the entire default judgment should be set aside pursuant to Rule 60(b)(6). The Lundells raise eleven separate arguments ranging from lack of proper venue to error in awarding punitive damages. The only argument of merit relates to punitive damages, which we review under the Rule 60(b)(6) framework.

"Relief under Rule 60(b) is an extraordinary remedy," Nucor, 999 F.2d at 374, since exceptional circumstances must exist to justify intrusion into the sanctity of a final judgment. See Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984). To justify intrusion into the final judgment, the Lundells contend that

---

[3]Both parties seem to almost entirely overlook the procedural context in which this case arises. Very little discussion of the standards under Rule 60(b) were addressed in the briefs or mentioned at oral argument– even though both parties were extensively questioned on the issue. Yet, the district court clearly based its decision on Rule 60(b)(6), and we review that decision.

either (1) Iowa's requirements for punitive damages are not met, or (2) the punitive damages awarded in this case are excessive and unconstitutional.

Under Iowa law, punitive damages are appropriate where the conduct constitutes "willful and wanton disregard for the rights or safety of another." Iowa Code Ann. § 668(A)(1)(a). This case arises from a breach of contract. While an ordinary breach of contract does not give rise to punitive damages in Iowa, if the breach is accompanied by or results in independently tortious actions or fraudulent activity then punitive damages are permissible. See Pogge v. Fullerton Lumber Co., 277 N.W.2d 916, 919-20 (Iowa 1979). The district court found that the Lundells' actions constituted "willful and wanton disregard for the rights of Daniel and Cynthia Watkins." Watkins v. Lundell, No. 4-93-CV-10487, slip op. at 9-10 (S.D. Iowa Jan. 11, 1994) (report and recommendation adopted in full by district court). That finding satisfies the requirements for punitive damages under Iowa law.

The Lundells want to revisit the factual findings under Rule 60(b)(6). The district court refused to review the findings of willful and wanton disregard for the Watkins' rights. We agree with this approach and find no abuse of discretion. The Lundells have shown no exceptional circumstances on this issue. If we were to revisit factual findings without some showing of exceptional circumstances, then Rule 60(b)(6) would be nothing more than an end-run around the entire judicial process. Therefore, we turn to the Lundells' argument of excessive and unconstitutional punitive damages.

We first consider the abstract question whether an award of excessive and unconstitutional punitive damages in and of itself presents exceptional circumstances. The Supreme Court has expressed a profound concern for "unlimited judicial discretion" in fixing punitive damages. Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 18 (1991). To avoid unlimited judicial discretion, the Supreme Court has scrutinized the procedures for reviewing punitive damages as well as the substantive

considerations. See, e.g., BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996) (engaging in extensive and meticulous review of the state procedure and relevant substantive guideposts for reviewing a jury award of punitive damages); TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993) (same); Haslip, 499 U.S. at 18-23 (same). Procedural and substantive strictures are necessary to ensure that punitive damage awards, which are proxy for punishment and deterrence, comply with constitutional requirements. See Haslip, 499 U.S. at 19; see also Midwest Home Distrib., Inc. v. Domco Indus., 585 N.W.2d 735, 743 (Iowa 1998) (stating purposes of punitive damages).

In the Lundells' case, relevant substantive factors, such as the degree of reprehensibility, the ratio of actual to punitive damages and the wealth of the defendant were analyzed. However, the procedural context raises concerns. The $3,617,500 in punitive damages was awarded on default and reviewed only by the judge who entered the judgment. We think that this measure of review does not comport with the Supreme Court's pronouncements. Cf. Honda Motor Co. v. Oberg, 512 U.S. 415, 432 (1994) (holding that denial of judicial review of punitive damages violates the Due Process Clause). In light of these concerns, and because of the equitable nature of the inquiry, we agree with the district court, that exceptional circumstances exist justifying operation of Rule 60(b)(6).

We next consider whether the punitive damages assessed against Terry and Stephanie Lundell, in the amount of $3,500,000 and $117,500 respectively, are excessive and unconstitutional. The constitutionality of punitive damages is reviewed under the due process clause to determine if they are "grossly excessive." BMW, 517 U.S. at 568. The Supreme Court in BMW considered three guideposts to determine if punitive damages are grossly excessive: (1) the degree of reprehensibility of the parties' actions; (2) the ratio between the actual harm inflicted and the punitive damages; and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. See id. at 575. We review the punitive

damage awards against Terry and Stephanie Lundell separately and consider first the award against Terry Lundell—$3,500,000.

The degree of reprehensibility is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." Id. The degree of reprehensibility is also indicative of the constitutionally permissible size of the punitive damage award. The higher the degree of reprehensibility, the larger the punitive damages award it can support. Therefore, the punitive damages should be roughly proportionate to the enormity or gravity of the offense. See id. 575-76.

The reprehensible conduct in question involves a breach of contract and fraud claim. The Watkins agreed to settle their breach of contract and fraud claim based on representations made by Terry Lundell. The first payment, only a small portion of the total required under the settlement, was due ten days after the settlement was finalized. Despite an extension and despite years of subsequent efforts, the Lundells have never paid any of the settlement. It is a fair inference, based on previous conduct, conduct during the settlement, and subsequent conduct, that Terry Lundell induced the settlement agreement knowing he would never pay any amount. Terry Lundell also gave worthless property as security and false assurances. He has repeatedly attempted to avoid and to delay his obligations in detriment to the rights of the Watkins.

The district court found that Terry Lundell engaged in a "pattern, practice or scheme characterized by fraud and deceit." Watkins v. Lundell, No. 4-93-CV-10487, slip op. at 23-24 (S.D. Iowa April 21, 1997) (report and recommendation adopted by district court). This is certainly more reprehensible than mere negligence. See BMW, 517 U.S. at 576. We agree with the district court that Terry Lundell's conduct is reprehensible, thereby supporting a punitive damages award, but question whether his conduct constitutes "the high degree of culpability that warrants a *substantial* punitive damages award." Id. at 580 (emphasis added).

The second guidepost is the ratio of punitive damages to the harm inflicted. There must be a "reasonable relationship" between the two. Id. Punitive damages of $3,500,000 versus actual damages of $235,000 represents a ratio of 14.89-to-1. While there is no mathematical formula marking the constitutional line for grossly excessive punitive damages, see id. at 582, the ratio here is very high. Cf. Dean v. Olibas, 129 F.3d 1001, 1007 (8th Cir. 1997) (finding a 14-to-1 ratio very high).

In Haslip, 499 U.S. at 23, the Supreme Court found that a 4-to-1 ratio was "close to the line" of constitutional impropriety in a case involving fraud by an insurance agent. In the present case, we have fraud in the inducement of a settlement agreement where both sides were sophisticated and represented by counsel. The actions in Haslip are not so dissimilar from Terry Lundell's, yet the actions in Haslip hardly supported a ratio of 4-to-1. On review of this record, we are not convinced that the conduct of Terry Lundell is reprehensible enough to justify greater than a 4-to-1 ratio.

The third BMW guidepost instructs courts to compare the punitive damages to comparable civil or criminal sanctions imposed for the conduct. See BMW, 517 U.S. at 583-84. The most comparable civil sanction for Terry Lundell's actions would be for fraudulent practices, which carries a maximum fine of $10,000. See Iowa Code Ann. § 714.8 (defining fraudulent practices); Iowa Code Ann. § 714.9 (making a fraudulent practice, involving over ten thousand dollars a class "C" felony); Iowa Code Ann. § 902.9 (setting the maximum fine and imprisonment for a class "C" felon). For Terry Lundell, the maximum fine for his conduct compared to the $3,500,000 in punitive damages represents a ratio of 350-to-1. Under this guidepost, the "monetary comparisons are [also] wide." Haslip, 499 U.S. at 23.

The district court, following Pulla v. Amoco Oil Co., 72 F.3d 648, 659 (8th Cir. 1995) (Justice Byron R. White, Retired Associate Justice of the United States Supreme Court, sitting by designation), also considered Terry Lundell's wealth.

Although BMW analyzed three relevant guideposts, they are not the exclusive factors. Cf. Haslip, 499 U.S. at 22 (concluding that certain factors considered by the state, including "financial position," were sufficient). We also find the wealth of the defendant an appropriate consideration here. Terry Lundell's net worth was found to be $11,000,000. This finding is now vigorously disputed by Terry Lundell, but he refuses to provide any contrary evidence. We must accept it as true. Even so, we find that an award of $3,500,000 in punitive damages compared to a net worth of $11,000,000 is excessive.

In view of these considerations, we conclude that the punitive damages award against Terry Lundell is exaggerated. Furthermore, in Pulla we stated that although the presence of these guideposts or factors may justify a large punitive award, their absence may also "counsel against a large award." Pulla, 72 F.3d at 659 (speaking of analogous factors). In keeping with Pulla, we find Terry Lundell's conduct justifies punitive damages, but are not persuaded that the award should exceed a 4-to-1 ratio ($940,000) in this case. Thus, we find that the district court abused its discretion by failing to exercise its power under Rule 60(b)(6) to set aside the default judgment and reduce the punitive damages award against Terry Lundell.

Punitive damages, in the amount of $117,500, were also awarded against Stephanie Lundell. The Watkins argue that as Terry's wife, she was fully aware of all that occurred and should therefore be responsible for punitive damages. The Lundells contend that Stephanie Lundell acted only as a guarantor. The record supports the Lundells' contention. Stephanie Lundell's conduct lacks the requisite reprehensibility. Simple failure to pay as a guarantor does not suggest the type of conduct, such as fraud, deceit or trickery, associated with punitive damages. The fact that the punitive damages award is half the compensatory damages does not save this from the requirements of due process.

The magistrate judge had a "serious concern" about the constitutionality of the punitive damages award against Stephanie Lundell, and reduced the original amount. <u>Watkins</u>, slip op. at 19 (April 21, 1997). We agree with the underlying concerns articulated by the magistrate judge and find that the district court abused its discretion by failing to eliminate the punitive damages award against Stephanie Lundell.

## III. CONCLUSION

For the foregoing reasons we affirm in part and reverse in part the district court's denial of relief from default judgment under Rule 60(b)(6) and remand to the district for proceedings consistent with this opinion.

MORRIS SHEPPARD ARNOLD, dissenting.

I respectfully dissent from the judgment of the court.

In the first place, I would hold that relief from this judgment is simply not available under Rule 60(b)(6) because the requisite exceptional circumstances are not present. The Lundells allege nothing but an error of law, and if every error of law is sufficient to undermine a judgment, the entire doctrine of *res judicata* is undone.

The supposed error of constitutional law on which the court bases its relief, moreover, is not in fact an error of law: The judge who entered the default judgment performed, as the court itself admits, an analysis that comported with due process before it awarded damages. There is no constitutional right to have this process repeated if the judgment is not appealed. The court's reliance on *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994) is misplaced, for that case simply held that the complete absence of judicial review of punitive damage awards was unconstitutional.

Finally, even if Rule 60(b)(6) was appropriately invoked here, and even if I thought it proper to undertake a review of the punitive damage award, I would not find the award to be grossly excessive under *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).  *Cf. Dean v. Olibas*, 129 F.3d 1001 (8th Cir. 1997).

I would therefore reverse the judgment of the district court and remand the case for entry of judgment in the amount of the original default judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.