Patrick **MURRAY**, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

**SOLIDARITY OF LABOR ORGANIZATION INTERNATIONAL UNION BENEFIT FUND a/k/a S.O.L.O. Benefit Fund, Defendant.**

No. C00–4168–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 11, 2001.

Stanley E. Munger, Jay E. Denne of Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiff.

Jeff W. Wright of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, IA, for Defendant.

**MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANT'S MOTION TO SET ASIDE
DEFAULT JUDGMENT AND AP-
PLICATION FOR STAY OF EXE-
CUTION**

BENNETT, Chief Judge.

**TABLE OF CONTENTS**

I. *INTRODUCTION* ..................................................1137
 A. *Factual And Procedural Background To The Default Judgment* ..........1137
 B. *The Motion To Set Aside The Default Judgment* ........................1138
 C. *The Fund's Factual Contentions* .....................................1139

II. *LEGAL ANALYSIS* .............................................1140
 A. *Relief Pursuant To Rule 60(b)(1)* ...................................1141
 1. *Pertinent factors* ............................................1141
 2. *Weighing the factors* .........................................1142
 a. *Reason for the delay* ......................................1142
 b. *Other considerations* ......................................1147
 3. *Summary* .....................................................1148
 B. *Relief Pursuant To Rule 60(b)(6)* ...................................1151
 1. *Relief sought within a "reasonable time"* ............................1151
 2. *Exceptional circumstances* ....................................1152
 C. *Relief Pursuant To Rule 60(b)(4)* ...................................1154
 D. *Stay Of Execution* ................................................1154

III. *CONCLUSION* ...............................................1155

Does inexcusable neglect by counsel nevertheless constitute only "excusable neglect" by a party against whom a default judgment was entered, such that the default should now be set aside? That is one of the questions raised in this action in which the defendant ERISA benefit plan is attempting, five months after the fact, to set aside a default judgment in favor of the plaintiff for unpaid medical expenses, wrongful termination of insurance coverage, and libel, including $2.5 million in punitive damages on the libel claim.

## I. INTRODUCTION

### A. Factual And Procedural Background To The Default Judgment

Plaintiff Patrick Murray filed this action on December 1, 2000, against defendant Solidarity of Labor Organization Interna-tional Union Benefit Fund, also known as S.O.L.O. Benefit Fund, asserting claims arising from the denial by S.O.L.O. Benefit Fund of payment for medical bills in excess of $75,000 from a heart attack he suffered on October 31, 1999. S.O.L.O. Benefit Fund denied the payments, informing Dr. Hildebrand, Murray's Iowa treating physician, that Murray's heart attack was a "condition manifested prior to coverage and non-disclosed on the contract." S.O.L.O. Benefit Fund denied all subsequent claims for health care benefits by Murray, failed to respond to Murray's requests for review of denial of his claims, and notified him by letter dated August 25, 2000, that it was not renewing his health care benefits effective September 30, 2000.

In his Complaint, Murray alleged, in Count I, failure to pay claims and wrongful termination of health insurance benefits in

violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.;* in Count II, a class action on behalf of others to whom S.O.L.O. Benefit Fund has wrongfully refused to pay benefits; and in Count III, a pendant state-law claim of libel. On February 27, 2001, Murray personally served S.O.L.O. Benefit Fund with the Complaint and various discovery requests. S.O.L.O. Benefit Fund never entered an appearance in this action, through counsel or otherwise, never answered the Complaint nor filed any responsive motion to it, and never responded to Murray's discovery requests.

On March 30, 2001, Murray filed a motion for default, a copy of which he sent to William Fagello, S.O.L.O. Benefit Fund's Administrator and designated agent for service of process according to S.O.L.O. Benefit Fund's Summary Plan Description. The Clerk of Court entered the default on March 30, 2001, finding that it appeared from the record and affidavit of Murray's counsel that S.O.L.O. Benefit Fund was in default. The Clerk also mailed a copy of the Default Entry to S.O.L.O. Benefit Fund. On April 3, 2001 Murray filed a motion for entry of default judgment and a motion for a hearing to determine the amount of damages. The undersigned originally set a hearing on the motion for entry of default judgment and damages for May 4, 2001, then rescheduled the hearing for May 11, 2001. Copies of these motions and orders setting hearings were also sent to S.O.L.O. Benefit Fund. However, S.O.L.O. Benefit Fund did not resist the motion entry of default judgment and did not appear for the hearing on May 11, 2001.

Upon the evidence presented at the hearing on May 11, 2001, the court directed the entry of judgment by default in favor of Murray on Counts I and III of his Complaint. On May 15, 2001, pursuant to the court's direction and award of damages, judgment was entered on Count I of Murray's Complaint, his individual ERISA claim, for $75,367.28 for unpaid medical expenses, $15,604.30 for attorney fees incurred to that date, $355.95 in costs, and $123,082.68 for wrongful termination of insurance coverage, all with pre- and post-judgment interest at the highest legal rate. Judgment was also entered on Count III of Murray's Complaint, the libel claim, for $50,000 for emotional distress and $2.5 million in punitive damages for conduct directed specifically at the plaintiff pursuant to Iowa Code § 668A.1. On Murray's motion, judgment was also entered on June 11, 2001, on Count II of his Complaint, the ERISA class-action claim, dismissing that claim without prejudice.

### B. The Motion To Set Aside
### The Default Judgment

After obtaining the default judgment, Murray levied on S.O.L.O. Benefit Fund's bank accounts, and the Fund's accounts were frozen. This prompted S.O.L.O. Benefit Fund to file, on October 4, 2001, a Motion To Set Aside Default Judgment And Application For Stay Of Execution and a separate Request For Expedited Hearing. S.O.L.O. Benefit Fund's motion to set aside the default judgment was accompanied by supporting exhibits and the affidavit of Gloria Larrondo. On October 5, 2001, Murray filed a resistance to the motion to set aside default judgment and application for stay of execution, likewise accompanied by supporting documents, all from the record in this case.

In light of the request for expedited relief on S.O.L.O. Benefit Fund's motion to set aside the default judgment and the court's crowded schedule, the court held a hearing or October 8, 2001, a federal holiday. Plaintiff Patrick Murray, who was personally present, was represented by

Stanley E. Munger and Jay E. Denne of Munger, Reinschmidt & Denne in Sioux City, Iowa. Defendant S.O.L.O. Benefit Fund was represented by Jeff W. Wright of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., in Sioux City, Iowa. At the hearing, S.O.L.O. Benefit Fund filed a supplement to its motion to set aside default judgment and an additional supporting affidavit by Norman W. Albert. Subsequently, S.O.L.O. Benefit Fund filed a second and third affidavit by Gloria Larrondo on October 8 and 9, 2001, respectively. The court compliments counsel for both parties for marshaling authorities, evidence, and arguments so effectively on relatively short notice.

### C. The Fund's Factual Contentions

The essence of S.O.L.O. Benefit Fund's initial argument to set aside the default judgment is that the attorney to whom it contends that it had entrusted defense of this lawsuit, Patricia McConnell of the firm of Meyer, Suozzi, English & Klein, P.C., in New York, New York, failed to do anything, and in fact, misrepresented the status of the case and what she had done to defend it. More specifically, S.O.L.O. Benefit Fund asserts that Ms. Larrondo, the Fund Coordinator, forwarded Murray's complaint to Ms. McConnell on March 7, 2001, and that Ms. McConnell indicated to Ms. Larrondo that she would file an appropriate responsive pleading, but Ms. McConnell in fact did nothing. When S.O.L.O. Benefit Fund received Murray's motion for default and the Clerk's Default Entry on or about March 30, 2001, S.O.L.O. Benefit Fund contends that it again contacted Ms. McConnell and was advised that she would take care of the default. Again, in May 2001, when S.O.L.O. Benefit Fund received notice that Murray was seeking entry of a default judgment, and that the default judgment had in fact been entered, S.O.L.O. Benefit

Fund contends that it again received assurances from Ms. McConnell that the problem would be remedied. Moreover, in June 2001, when Ms. McConnell forwarded the court's order dismissing Count II of Murray's complaint, Ms. McConnell purportedly represented to S.O.L.O. Benefit Fund that the dismissal of that count resolved the matter. S.O.L.O. Benefit Fund contends that neither Ms. Larrondo, the Fund Coordinator, nor William Fagello, the Administrator of S.O.L.O. Benefit Fund, has any legal training and that they relied entirely on Ms. McConnell to represent and protect the interests of S.O.L.O. Benefit Fund in this litigation. Therefore, Ms. Larrondo and Mr. Fagello contend that they accepted and relied on Ms. McConnell's representations that this matter had been attended to and resolved until Murray levied on S.O.L.O. Benefit Fund's bank accounts.

At the October 8, 2001, hearing, present counsel for S.O.L.O. Benefit Fund represented that, after the former head of the Solidarity of Labor Organization International Union, Ms. Rodriguez, was fired for inappropriate conduct, a schism developed, with approximately 2000 of the 2400 members of the union choosing to join a new union organized by Ms. Rodriguez and her associates, leaving the Solidarity of Labor Organization International Union with only approximately 400 members. Present counsel also represented that Ms. McConnell was on friendly terms with Ms. Rodriguez, and since Ms. Rodriguez's departure, has been wholly uncooperative with the remnants of the union, including the Benefit Fund and its representatives. S.O.L.O. Benefit Fund's present counsel represented that, for example, Ms. McConnell has thus far refused to turn over her case file in this matter.

S.O.L.O. Benefit Fund represents that the freezing of the two accounts upon

which Murray has levied, which together total approximately $200,000, will do severe damage to the plan and its participants, as checks already written to pay benefits for medical, dental, and optical treatments, and pharmaceuticals will be dishonored, and the plan will be unable to pay future claims. S.O.L.O. Benefit Fund contends that this will result in damage to participants and termination of providers' contracts to provide member services.

S.O.L.O. Benefit Fund also contends that it has a meritorious defense to Murray's claims—both his ERISA claims of wrongful denial of benefits and termination of coverage and his claim that he was libeled by S.O.L.O. Benefit Fund's statement to his health care providers that his coverage was denied for failure to disclose a pre-existing condition. S.O.L.O. Benefit Fund points to medical evidence it has submitted indicating that Murray was taking Univasc, a medication for hypertension, from May 29, 1997, and that he had a heart attack on August 25, 1998. However, at the hearing, the parties stipulated that, if called to testify, Mr. Murray would testify that he is a diabetic and that he was prescribed Univasc as an ACE inhibitor to protect his kidneys, not for hypertension.

S.O.L.O. Benefit Fund also represents that Mr. Murray is the only person that S.O.L.O. Benefit Fund has ever had in Iowa that sought to be a member for healthcare purposes. The court accepted this representation as true. On October 8, 2001, S.O.L.O. Benefit Fund submitted a second affidavit of Ms. Larrondo, in which she avers that "Plaintiff, Patrick Murray, is the only person ever associated with S.O.L.O. Benefit Fund from the State of Iowa." Second Affidavit of Gloria Larrondo, ¶ 2. On October 9, 2001, S.O.L.O. Benefit Fund filed a third affidavit of Ms. Larrondo, in which she avers that she checked the records on her computer system after the weekend holiday and found that

"S.O.L.O. Benefit Fund did pay some benefits to Iowa providers on behalf of Mr. Murray, the Plaintiff in this action, prior to this litigation," but that "Plaintiff, Patrick Murray, is the only person ever associated with S.O.L.O. Benefit Fund from the State of Iowa"; that "S.O.L.O. Benefit Fund has no other members from Iowa and never has had any other members from the State of Iowa"; and that "S.O.L.O. Benefit Fund has never paid any benefits to providers within the State of Iowa for any other members." Third Affidavit of Gloria Larrondo, ¶¶ 4–7.

## II. LEGAL ANALYSIS

### (Including Necessary Findings Of Fact)

Rule 55 of the Federal Rules of Civil Procedure, which provides for entry of default by the Clerk of Court, FED.R.CIV.P. 55(a), and entry of default judgment by either the Clerk or the court, FED.R.CIV.P. 55(b)(1) & (2) (respectively), also identifies the circumstances under which a default or default judgment may be set aside. *See* FED.R.CIV.P. 55(b). Specifically,

(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, *if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).*

FED.R.CIV.P. 55(c) (emphasis added). Thus, the standards applicable to setting aside a default are the same as those stated in Rule 60(b) of the Federal Rules of Civil Procedure.

In this case, S.O.L.O. Benefit Fund originally relied only on Rule 60(b)(1) of the Federal Rules of Civil Procedure as the basis for setting aside the default judgment in this case, because it contends that the default resulted from "excusable neglect." *See* FED.R.CIV.P. 60(b)(1) (the court may set aside a judgment for "mistake, inadvertence, surprise, or excusable

neglect"). At the hearing on October 8, 2001, and in its supplement to its original motion, S.O.L.O. Benefit Fund added assertions that the default judgment should be set aside pursuant to Rule 60(b)(1) for "surprise," Rule 60(b)(6), the "catchall" ground, and Rule 60(b)(4), for lack of personal jurisdiction. *See* FED.R.CIV.P. 60(b)(4) (a judgment may be set aside because "the judgment is void") & (6) (a judgment may be set aside for "any other reason justifying relief from the operation of the judgment"). The court will consider each of these arguments for setting aside the default judgment in turn.

### A. Relief Pursuant To Rule 60(b)(1)

S.O.L.O. Benefit Fund contends that the default judgment should be set aside for "excusable neglect," because the Fund itself was not culpable in any way for the default; rather, counsel to whom the matter was entrusted not only failed to do anything, but misrepresented to the Fund that the matter had been favorably resolved. At the hearing, S.O.L.O. Benefit Fund added a contention that the judgment should be set aside owing to "surprise," because it was misled by its attorney into believing that the default judgment had been set aside by dismissal of Count II of the Complaint, and did not discover otherwise until its bank accounts were frozen when Murray levied on them pursuant to the default judgment. However, even counsel for S.O.L.O. Benefit Fund admitted that this "surprise" argument might seem "disingenuous" in light of the fact that Count II asserted only a class-action claim, while the default judgment for approximately $2.7 million had previously been entered on an individual ERISA claim and a libel claim.

### 1. Pertinent factors

The Eighth Circuit Court of Appeals recently explained that the term "excusable neglect" in Rule 60(b)(1) " 'is un-derstood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.' " *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.,* 256 F.3d 781, 782 (8th Cir.2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Further, the court explained the scope of the court's consideration of the circumstances:

In deciding whether to set aside a default judgment for "excusable neglect," a district court ought not to focus narrowly on the negligent act that caused the default and ask whether the act was itself in some sense excusable. Instead, the court should take account of "all relevant circumstances surrounding the party's omission," *Pioneer Investment,* 507 U.S. at 395, 113 S.Ct. 1489, 123 L.Ed.2d 74. The inquiry is essentially an equitable one, and the district court is required to engage in a careful balancing of multiple considerations, including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith," *id.* We have applied these principles regularly since the Supreme Court laid them out in *Pioneer Investment. See, e.g., Johnson v. Dayton Electric Manufacturing Co.,* 140 F.3d 781, 784 (8th Cir.1998); *see also In re Payless Cashways, Inc.,* 230 B.R. 120, 137–39 (8th Cir.BAP (Mo.) 1999), *aff'd,* 203 F.3d 1081 (8th Cir.2000). We have also concluded that "the existence of a meritorious defense continues to be a relevant factor," *Johnson,* 140 F.3d at 784, in deciding these kinds of cases after *Pioneer Investment.*

In this case, we believe that the district court erred in focusing exclusively

on [the defaulting defendant's] proffered reason for the mistake, which the court found to be inadequate and unsatisfactory. Although we have indicated in past cases that the reason for a party's delay is a key consideration in determining whether that party's negligence is excusable, this principle does not provide *carte blanche* to a district court to disregard the other considerations that *Pioneer Investment* identified. *See Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.2000), *cert. denied*, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000).

*Union Pac.R.R. Co.*, 256 F.3d at 782–83. The district court's ruling under Rule 60(b)(1) is reviewed for an abuse of discretion. *Id.* at 782.

Applying these standards, the court in *Union Pacific Railroad Company* found that the defaulting defendant had "committed a single, simple error that left it unaware of Union Pacific's lawsuit." *Id.* at 783. Moreover, "[t]he error did not result from a mistake of law, nor did [the defaulting defendant] act negligently over a long period of time despite receiving warnings about its omission." *Id.* In light of these conclusions, the court reasoned that "the other equitable considerations that *Pioneer Investment* identified are entitled to significant weight in determining whether the motion under Fed.R.Civ.P. 60(b)(1) should be granted." *Id.* Weighing these "other equitable considerations," the court found that, as soon as the defendant had notice of the default judgment, it entered into negotiations with the plaintiff in an effort to have the default judgment set aside, and when those negotiations failed, it moved to set aside the judgment only three weeks after it received notice of the default and less than six months after the suit was filed. *Id.* The court found further that this short-term delay had not undermined the plaintiff's ability to advance its claim, concluding that "the fact that [the

plaintiff's] rights would not be affected weighs heavily in favor of [the plaintiff's] motion to set aside the default judgment." *Id.* The court also found that providing the relief requested by the defaulting party would not disrupt the judicial process in any measurable way, that the defendant had acted in "good faith," and that the defendant had "posited a defense that on its face appears to have considerable merit." *Id.* For these reasons, the Eighth Circuit Court of Appeals concluded that the district court should have set aside the default judgment.

### 2. *Weighing the factors*

#### a. *Reason for the delay*

■ Beginning—but not ending—with "the negligent act that caused the default and ask[ing] whether the act was itself in some sense excusable," *see id.* at 782, it is readily apparent that blaming the delay upon counsel simply does not constitute "excusable neglect," however obvious counsel's negligence may now be and however unsophisticated the litigants. In *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117 (8th Cir.1997), the Eighth Circuit Court of Appeals rejected the defaulting defendants' contention "that the district court abused its discretion in imputing counsel's inaction to them," as follows:

[The defendants] assert that they are unsophisticated litigants who did all they could to keep abreast of the case. The Supreme Court, however, has explained that our focus should not be on whether defendants "did all they reasonably could in policing the conduct of their attorney [but] on whether their attorney, as [defendants'] agent, did all [s]he reasonably could to comply with the court-ordered [deadlines]." *Pioneer Investment Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 396, 113 S.Ct. 1489,

1499, 123 L.Ed.2d 74 (1993). Defendants claim that *Mann v. Lewis* 108 F.3d 145, 147 (8th Cir.1997), modifies that principle in the context of default judgments. In *Mann,* the district court dismissed plaintiff's claims with prejudice after supplemental discovery had been filed two days late and compliance with a pretrial order was seven days overdue. On appeal, we held that dismissal with prejudice was too harsh a sanction for this attorney negligence. Thus, *Mann* is an example of the violation not being severe enough to merit extinction of a party's claim. It does not hold that, as a general matter, parties are not bound by counsel's acts.

*Litigants choose counsel at their peril. Comiskey v. JFTJ Corp.,* 989 F.2d 1007, 1010 (8th Cir.1993); *Boogaerts v. Bank of Bradley,* 961 F.2d 765, 768 (8th Cir.1992). *While it may seem harsh to make defendants answer for their attorney's behavior, any other result would punish [the plaintiff] for the inaction of her opponents' lawyer. Defendants are* better suited to bear this risk. If they were truly diligent litigants who were misled and victimized by their attorney, they have recourse in a malpractice action. Link v. Wabash R.R., 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390 n. 10, 8 L.Ed.2d 734 (1962).

*Inman,* 120 F.3d at 118–19 (emphasis added); *see also Pioneer Inv. Servs Co.,* 507 U.S. at 396–97, 113 S.Ct. 1489 (concluding that the principle that "clients must be held accountable for the acts and omissions of their attorneys ... applies with equal force [to entry of default judgment] and requires that respondents be held accountable for the acts and omissions of their chosen counsel," and therefore holding, "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable") (emphasis in the original).

■ Assuming, without deciding, that Ms. McConnell was actually retained by S.O.L.O. Benefit Fund to represent it in this matter,[1] it is clear that Ms. McConnell, did *not* do all she reasonably could to comply with the deadline for filing an an-

1. There is no document in the record, such as a retention letter, evidencing an express agreement between Ms. McConnell and S.O.L.O. Benefit Fund that Ms. McConnell would represent the Fund in this litigation, either before or after the default judgment was entered, or that Ms. McConnell was "on retainer" to represent S.O.L.O. Benefit Fund in any and all legal matters. Such evidence as can be found in the record concerning whether or not Ms. McConnell was retained to defend S.O.L.O. Benefit Fund in this specific litigation, apart from bald assertions, is circumstantial and uncertain at best. For example, Ms. Larrondo avers, in her first affidavit, that she "forwarded Plaintiff's Complaint in this case to Patricia McConnell ... who was the attorney for the Fund at that time." Defendant's Motion To Set Aside Default Judgment, Exhibit B, Affidavit of Gloria Larrondo, ¶ 3. Ms. Larrondo avers further that "I intended that [Ms. McConnell] defend this case on behalf of the Fund and I relied upon her to do so," that she believed Ms. McConnell had done so, and was assured on various occasions by Ms. McConnell that she would "handle" or "take care of" various matters in this litigation. *See id.* at ¶¶ 3–6. Similarly, Mr. Albert, who had previously represented S.O.L.O. Benefit Fund in "various matters," and apparently continued to handle "some legal matters for the Fund" after Ms. McConnell "replace[d][him] as counsel," avers that Ms. McConnell was retained to handle *other* litigation for the Fund, in the United States District Court for the Southern District of New York, and that she represented to the Board of Trustees that she had "accomplished vacating" the default judgment in this case, after the default judgment was brought to the Board's attention by Ms. Larrondo at a meeting on June 15, 2001. Affidavit of Norman W. Albert, ¶¶ 2–3. Thus, it is not clear from the evidence now offered by S.O.L.O. Benefit Fund that Ms. McConnell was actually retained to litigate this case on the Fund's behalf *at all,* or that, if she was retained to defend the Fund in this specific litigation, whether or not she was retained *before* the default judgment was entered.

swer or responsive motion to Murray's Complaint. *See Inman,* 120 F.3d at 118. In addition, in response to a motion for entry of default or default judgment, a reasonably competent attorney could be expected, for example, to (1) contact the Clerk of Court to determine when service was purportedly effected upon the client to determine when the time for a timely answer ran; (2) contact opposing counsel to determine whether opposing counsel would object to an extension of time to move or plead in response to the Complaint; (3) enter an appearance in the case and, if necessary, engage local counsel; (4) move the court for an extension of time to move or plead in response to the Complaint; (5) take prompt steps to obtain the information from the client necessary to frame a response to the Complaint; (6) determine whether any discovery requests had been sent by opposing counsel, when they were due, and what was required to answer them; and (7) explain to the client the procedural footing of the case, the merits of the opposing party's motion for entry of a default or default judgment, and the specific steps the attorney intended to take to rectify any dilatory response to the lawsuit.

Thus, unlike the situation in *Union Pacific Railroad Company,* both defaulting defendant's counsel and the defendant itself were plainly aware of Murray's lawsuit from the time it was filed, and were aware of each procedural step leading toward a default judgment. *Cf. Union Pac.R.R. Co.,* 256 F.3d at 783. In other words, defaulting defendant's counsel here committed several, compounding errors, with full knowledge of the existence and status of the litigation, not merely "a single, simple error that left [S.O.L.O. Benefit Fund] unaware of [Murray's] lawsuit." *Cf. id.* Moreover, S.O.L.O. Benefit Fund's counsel "act[ed] negligently over a long period of time despite receiving warnings about [her] omission." *Id.* In this case, accepting

the averments in Ms. Larrondo's and Mr. Albert's affidavits as true, it appears that Ms. McConnell did nothing at all except misrepresent the status of the case to her client, which would seem to transform mere negligence into something altogether "inexcusable." Nor is there any satisfactory explanation for counsel's failure to defend this lawsuit. *See, e.g.,Securities & Exchange Comm'n v. McNulty,* 137 F.3d 732, 738–39 (2d Cir.1998) (stating that "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," and finding that the record on the motion to set aside the default judgment contained no affidavit from former counsel offering an explanation for his failure to defend the lawsuit), *cert. denied sub nom. Shanklin v. Securities & Exchange Comm'n,* 525 U.S. 931, 119 S.Ct. 340, 142 L.Ed.2d 281 (1998). Although it may seem harsh to visit upon S.O.L.O. Benefit Fund the sins of their attorney, the Fund "ch[o]se counsel at [its] peril," and setting aside the default judgment on the basis of its counsel's failings "would punish [Murray] for the inaction of h[is] opponent['s] lawyer," a result as unsatisfactory here as it was in *Inman. See id.* at 118–19. As in *Inman,* if S.O.L.O. Benefit Fund was "truly [a] diligent litigan[t] who [was] misled and victimized by [its] attorney, [it] ha[s] recourse in a malpractice action" against Ms. McConnell. *Id.* at 119.

Moreover, the court is not altogether convinced, even if it were inappropriate to impute the failings of counsel to the litigant, that only inaction or negligence of counsel was at work here. S.O.L.O. Benefit Fund does not dispute that its employees and agents received notice of Murray's Complaint and each of the filings leading, ultimately, to entry of a $2.7 million default judgment, and notice of that sizeable judgment itself. *Cf. Union Pac.R.R. Co.,* 256 F.3d at 783 (considering whether coun-

sel committed only "a single, simple error that left [the defaulting defendant] unaware of [the plaintiff's] lawsuit"). The "warnings" about *counsel's* omissions also came to the client in this case. *Cf. id.* Indeed, they had to, because no counsel had ever appeared in this action on behalf of S.O.L.O. Benefit Fund. It is, as defendant's current counsel all but conceded, "disingenuous" to argue that S.O.L.O. Benefit Fund was "surprised" either by the existence of the lawsuit, the entry of default judgment, or the levy on the defendant's accounts to recover the judgment, when S.O.L.O. Benefit Fund itself had notice of the lawsuit, the entry of default, and a very sizeable default judgment, but took no steps beyond calling counsel and accepting her statements that the matter would be handled.

Moreover, based on the record evidence before this court, it is clear that S.O.L.O. Benefit Fund failed to engage the counsel that it contends it had chosen to defend this action, Ms. McConnell, in even the slightest inquiry concerning her conduct. Nothing in the record indicates that, in the initial conversation with Ms. McConnell regarding this lawsuit, S.O.L.O. Benefit Fund (1) discussed what actions Ms. McConnell should undertake to defend the lawsuit; (2) what information she would need from S.O.L.O. Benefit Fund to defend this lawsuit; (3) how she would obtain the information needed; (4) when she would obtain that information; (5) what deadlines were imposed under the Federal Rules of Civil Procedure for defending the litigation; (6) how Ms. McConnell intended to meet the deadlines; and (7) whether Ms. McConnell was admitted to practice in the Northern District of Iowa, and if not, what steps would need to be taken to

obtain counsel admitted in this district or local counsel. In short, there is nothing in the record indicating that S.O.L.O. Benefit Fund did what a reasonable client could be expected to do in the initial contact with an attorney regarding representation or shortly thereafter. Indeed, the record contains no corroboration that Ms. McConnell was ever actually retained to represent S.O.L.O. Benefit Fund in this matter, in the form of, for example, a retention letter from Ms. McConnell or a letter requesting or confirming retention of Ms. McConnell by S.O.L.O. Benefit Fund. *See supra,* note 1.

Nor is there any corroboration of what S.O.L.O. Benefit Fund did at each stage of the proceedings when it received copies of filings from the Clerk of Court. There is no evidence that, apart from forwarding filings to Ms. McConnell, S.O.L.O. Benefit Fund engaged in reasonable follow-up with Ms. McConnell, pressing her to explain, for example, (1) the import of the various filings in the case; (2) why such actions had been taken by the opposing party, the Clerk of Court, or the court; (3) what action Ms. McConnell intended to take to rectify the Default Entry and, ultimately, the default judgment; or (4) what information Ms. McConnell needed from S.O.L.O. Benefit Fund to complete responses to filings in the case. Again, such a response from any reasonable client could be expected under the circumstances, not least, because the Default Entry and default judgment plainly put S.O.L.O. Benefit Fund on notice that heightened inquiry or follow-up was required. Under the circumstances, even a purportedly "unsophisticated" litigant, as S.O.L.O. Benefit Fund claims to be here,[2] could reasonably be expected to press counsel for adequate

---

**2.** The record does not support S.O.L.O. Benefit Fund's contention that its representatives were the "unsophisticated litigants" they claim to be. First, Mr. Albert's affidavit indicates that S.O.L.O. Benefit Fund was *also*

engaged in attempts to "collec[t] a large judgment entered in the United States District Court for the Southern District of New York" at the time Mr. Murray's lawsuit was march-

explanations, a plan for responding to the default or default judgment, assurances that appropriate steps would be taken, and confirmation that such steps had indeed been taken. Instead, S.O.L.O. Benefit Fund accepted without question the same brush-off answers it had received repeatedly. The record contains only references to a few isolated telephone calls and other contacts between S.O.L.O. Benefit Fund and Ms. McConnell in which Ms. McConnell purportedly indicated that she would take care of things. The record contains no copies of any correspondence between representatives of S.O.L.O. Benefit Fund and Ms. McConnell concerning this lawsuit.

Nor is there any indication that S.O.L.O. Benefit Fund took other reasonable actions, such as (1) seeking the assistance of a more senior attorney at Ms. McConnell's firm; (2) seeking advice from their former counsel, Mr. Albert, concerning the import of the various notices they were receiving, despite his continued association with the Fund in a more limited capacity, as evidenced by his affidavit filed in this action; (3) attempting to contact the Clerk of Court to determine whether any filings had ever been made on S.O.L.O. Benefit Fund's behalf; or (4) attempting to contact counsel for Mr. Murray to seek an extension of time to answer Mr. Murray's Complaint, when it appeared that Ms. McConnell had allowed a default to be entered by the Clerk of Court. Thus, there is no indication in the record that S.O.L.O. Benefit Fund itself took any reasonable steps to prevent the occurrence of the default and default judgment. *See McNulty*, 137 F.3d at 740 (finding that, not only was the record silent on any explanation for counsel's dilatory conduct, the client asserted only that he had done everything he could to *reverse* the consequences of the attorney's incompetence, but his affidavit "gave [no] indication that [he] had done anything whatever to prevent the default's occurrence").[3]

ing toward default judgment, and that S.O.L.O. Benefit Fund had access to other attorneys, such as Mr. Albert, at the time that its representatives contend that they were being misled by Ms. McConnell about her efforts to defend this lawsuit or to set aside the default judgment. *See* Affidavit of Norman W. Albert, ¶¶ 2 & 4. Mr. Murray points out that, "[o]n at least one other occasion, the Solidarity of Labor Organizations and William Fagello (the administrator for S.O.L.O.) has been sued in United States Federal Courts," citing *Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, 1998 WL 477964, 1998 U.S. Dist. LEXIS 12565 (S.D.N.Y.1998), and *Herman v. Solidarity of Labor Organizations Health & Welfare Fund*, 1999 U.S. Dist. LEXIS 8780 (S.D.N.Y.1999). *See* Plaintiff's Resistance To Defendant's Motion To Set Aside Default Judgment, 13; Plaintiff's Brief In Support Of Motion For Default Judgment (copies of cases attached as Exhibits 10 and 11). Mr. Fagello and the Solidarity of Labor Organizations Health and Welfare Fund are both defendants in the *Metzler* case. *See Metzler*, 1998 WL 477964 at *1, 1998 U.S.Dist. LEXIS 12565 at *1. It appears

that the "large judgment entered in the United States District Court for the Southern District of New York that Ms. McConnell was hired to pursue," according to Mr. Albert, *see* Affidavit of Norman W. Albert, ¶ 2, may be the judgment in excess of $9 million, plus daily interest, recommended by the magistrate judge in the *Herman* case, which was a lawsuit by the Department of Labor against other fiduciaries of the Solidarity of Labor Organizations Health and Welfare Fund, *inter alia*, "for the return of previously extracted fees to the employee welfare benefit plan," in which summary judgment against the fiduciaries had been entered by the district court. *See Herman*, 1999 U.S.Dist. LEXIS 8780 at *1–*2 & *14.

3. The Second Circuit Court of Appeals explained further in *McNulty* the reasons it found the defaulting party's affidavit indicated that he, not just his attorney, had not done enough to prevent the default from occurring, as follows:

For example, although Shanklin [the defaulting defendant] stated in his affidavit that he had placed some 20 calls to Rucker

Under the circumstances, the court finds that if S.O.L.O. Benefit Fund had, at some point, actually retained Ms. McConnell to represent it in this lawsuit, counsel's conduct was inexcusable and that, even if Ms. McConnell had been retained, S.O.L.O. Benefit Fund's own conduct amounts to willful blindness. Thus, as the first of "multiple considerations" the court must balance, *see Union Pac.R.R. Co.*, 256 F.3d at 782, the court finds that there is simply no "negligent act" that was "itself in some sense excusable," nor was there any "surprise," to open the door to setting aside default judgment under Rule 60(b)(1) in this case.

### b. Other considerations

■ As the *Union Pacific* decision plainly requires, this court must nevertheless consider " 'all relevant circumstances surrounding the party's omissions,' " not simply whether the particular negligent act that caused the default was excusable, to decide whether a default judgment should be set aside for "excusable neglect." *Union Pac.R.R. Co.*, 256 F.3d at 782. The additional considerations in the "equitable inquiry" include " 'the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, ... whether the movant acted in good faith,' " *see id.*

(quoting *Pioneer Inv.*, 507 U.S. at 395, 113 S.Ct. 1489), and " 'the existence of a meritorious defense.' " *Id.* at 783 (quoting *Johnson*, 140 F.3d at 784). In *Union Pacific*, "[b]ecause [the defaulting defendant's] negligence involved only a minor mistake, [the court] believe[d] that the other equitable considerations that *Pioneer Investment* identified are entitled to significant weight in determining whether the motion under Fed.R.Civ.P. 60(b)(1) should be granted." *Id.* at 783 (citing *Lowry*, 211 F.3d at 463). In the present case, however, the gross negligence of the defaulting defendant and its counsel suggests that a very different equitable balance among the factors is appropriate. Here, because the "other equitable considerations" are entitled to relatively *little* weight in determining whether or not S.O.L.O. Benefit Fund's Rule 60(b)(1) motion should be granted, where the mistakes of the defendant and its purported counsel were far from "minor," *compare id.*, S.O.L.O. Benefit Fund's showing that "other equitable considerations" should require the court to set aside the default judgment must necessarily be very substantial and persuasive. S.O.L.O. Benefit Fund has not made the necessary showing.

As to prejudice to the plaintiff, *id.* at 783, the court in *Union Pacific* considered whether the "delay would undermine [the plaintiff's] ability to advance its claim" and

[his former counsel] in the wake of the default judgment, he did not suggest that he had discussed the case with Rucker at all from the time the case was commenced in October 1994 until the default was entered in September 1995, or that he had made any effort to reach Rucker during that nearly one-year period. Similarly, although Shanklin indicated in his affidavit that he believed Rucker was preparing a motion to vacate the default, in part because Rucker billed him for alleged services on such a motion, Shanklin did not state, suggest, or in any way intimate that he had received

any bills from Rucker with respect to the lawsuit at any time prior to the default. Thus, the record reveals a party who by his own description is a sophisticated businessman, who after being sued by the SEC apparently did not talk to his attorney for nearly a year, and who apparently received no bills during that time to indicate that any attention was being given to his case. We see no basis on which to overturn the district court's conclusion that the willful default of Rucker should be imputed to Shanklin.

*McNulty*, 137 F.3d at 740.

whether its "rights would be affected." *Id.* In this case, the court explored with the parties whether or not setting aside the default judgment and "unfreezing" S.O.L.O. Benefit Fund's accounts could constitute "prejudice" to Murray, because it might make it more likely that assets of the Fund from which a judgment could be paid would simply disappear from the accounts during what might turn out to be protracted litigation, thus adversely affecting Murray's rights to relief. Coupled with that concern was a concern that, because the union has lost so many members as a result of the recent schism, it might be even less able to pay a judgment, if one is ultimately entered, after litigation of Murray's claims on the merits. Counsel for S.O.L.O. Benefit Fund did not contend that this is not the sort of "prejudice" contemplated. Indeed, this "prejudice" seems to the court to be similar in kind to the "concrete" prejudice, "such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion'" that the Eighth Circuit Court of Appeals has specifically identified. *See Johnson,* 140 F.3d at 785 (quoting *Berthelsen v. Kane,* 907 F.2d 617, 621 (6th Cir. 1990)).

Also in this case, the length of the delay and the impact on judicial proceedings are more significant than they were in *Union Pacific,* where the court found that the delay was only three weeks after entry of default judgment and only six months after the plaintiff filed its complaint. *See id.* Here, S.O.L.O. Benefit Fund allowed more than five months to pass after entry of a $2.7 million default judgment, and approximately ten months after the case was filed, before moving to set aside the default judgment. This is not a delay that could be described as "marginal." *See Inman,* 120 F.3d at 119 (considering whether the negligence of counsel resulted in only a "marginal failure to comply with time requirements"). Instead, it is the sort of

delay that thoroughly disrupts the orderly disposition of cases in the judicial process. In this district, because of the very crowded docket, a detailed proposed scheduling order must be served on the defendant with original service of the complaint. The parties must confer and submit the completed proposed scheduling order, which includes discovery deadlines, dispositive motion deadlines, and a trial readiness date, within 140 days after the case is originally filed. A magistrate judge then approves or modifies the parties' proposed scheduling order, and based on the proposed trial readiness date therein, a district judge sets the matter for trial on a trailing calendar. Thus, if a defendant defaults on answering the plaintiff's complaint, the entire process for orderly discovery and disposition in the case is disrupted and the case in effect loses its place in line for prompt adjudication of dispositive motions and trial on the merits. When a party who knew about the default judgment allows five months to pass before moving to set aside that judgment, the default judgment has already become final and non-appealable, and the plaintiff may already have registered the judgment in another district and taken substantial steps toward executing on the judgment, as happened in this case.

Moreover, S.O.L.O. Benefit Fund did not move to set aside the default judgment until its accounts were frozen by a levy to collect the judgment, which also differs considerably from the defaulting defendant's prompt attempts to negotiate a solution before moving to set aside the default judgment in *Union Pacific. See Union Pac. R.R. Co.,* 256 F.3d at 783. S.O.L.O. Benefit Fund contends that any delay was not within its reasonable control, where it was ignorant of counsel's inactivities and it was misled by counsel about the continued viability of the default judgment. *See id.* (whether the delay was within the reason-

able control of the movant is another factor). However, as the court suggested above, there were reasonable alternatives to S.O.L.O. Benefit Fund's reliance on counsel's reassurances, and plenty of warnings that counsel's reassurances were unreliable, such that the delay in the case and counsel's inaction is at least partly attributable to S.O.L.O. Benefit Fund's own willful blindness. For the same reason the court is not satisfied that S.O.L.O. Benefit Fund is blameless for the delay, and for the reason that counsel's conduct must be imputed to S.O.L.O. Benefit Fund, there is not sufficient "good faith" on S.O.L.O. Benefit Fund's part to outweigh other factors indicating that the default judgment should stand.

As to " 'the existence of a meritorious defense,' " *id.* at 783 (quoting *Johnson,* 140 F.3d at 784), the court in *Union Pacific* found that the defendant had "posited a defense that on its face appears to have considerable merit." *Id.* Similarly, in *Johnson v. Dayton Electric Manufacturing Co.,* 140 F.3d 781 (8th Cir.1998), the Eighth Circuit Court of Appeals explained that the issue for determination of whether or not there is a "meritorious defense" is "whether the proffered evidence 'would permit a finding for the defaulting party,' not whether it is undisputed." *Johnson,* 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir.1988), and citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure: Civil 2D § 2697 (1983)).

Here, S.O.L.O. Benefit Fund contends that its "meritorious defense" to Murray's ERISA claim is that he failed to disclose a pre-existing heart condition and that its "meritorious defense" to his libel claim is that S.O.L.O. Benefit Fund's statement of the reason for denial of Murray's claim, that Murray failed to disclose the pre-existing heart condition, was properly made in the ordinary course of its business and was true. Thus, whether or not S.O.L.O. Benefit Fund has "meritorious defenses" to both claims hangs on S.O.L.O. Benefit Fund's contention that Murray had been diagnosed with a heart condition and/or hypertension, because he was on Univasc, which is ordinarily prescribed for hypertension, and his doctor had stated that Murray "had a heart attack" on August 25, 1998, shortly before he signed up for S.O.L.O. Benefit Fund health care coverage.

Whatever "facial" merit there may be to S.O.L.O. Benefit Fund's defense, it may be no more than skin deep, in light of the undisputed medical records, which Murray authorized S.O.L.O. Benefit Fund to obtain with his application for coverage, and which S.O.L.O. Benefit Fund itself offers in support of its contentions that it has a meritorious defense. *See* Complaint, Exhibit 1, p. 2 & Defendant's Motion To Set Aside Default Judgment And Application For Stay Of Execution (Defendant's Motion To Set Aside), Exhibit D. Murray contends that Univasc was prescribed, not for hypertension, but to protect his kidneys, because he was a diabetic. Indeed, the court finds that this is the purpose for which Mr. Murray was prescribed Univasc as indicated by the medical records for Mr. Murray for May 29, 1997. *See* Defendant's Motion To Set Aside, Exhibit C (medical records for May 29, 1997, stating that Murray was prescribed Univasc "as his ACE inhibitor and [to] try to protect his kidneys," in light of his diabetes, not for hypertension). The court also finds that there is, in fact, no diagnosis of a heart attack in the medical records submitted, as asserted by S.O.L.O. Benefit Fund. Instead, Mr. Murray's medical records for August 25, 1998, contain a far more equivocal statement that "[i]t appears that he may have had a MI [myocardial infarc-

tion]" approximately a week earlier, when he complained about squeezing in his chest after eating some curly fries. *Id.* The medical records submitted contain no other "diagnosis" of a heart attack nor do they contain test results confirming a heart attack. Furthermore, to the extent that this evidence might marginally suffice to raise a jury question, it is simply not sufficient, in the "equitable" consideration of "all relevant circumstances" appropriate here, *see Union Pac.R.R. Co.,* 256 F.3d at 782, to require setting aside a default judgment entered five months ago following what appears to have been gross dereliction by the attorney the defendant contends represented it and what was certainly gross dereliction by the defendant itself in failing to respond to repeated notices that the entry of default judgment was imminent. In other words, where the defendant failed to defend an action through grossly dilatory conduct, a defense with little more than "facial" merit does not require the court to excuse the defendant's "inexcusable neglect" and set aside a default judgment.

Similarly unpersuasive is S.O.L.O. Benefit Fund's contention that it has a "meritorious defense" to the libel claim, because that claim is preempted by ERISA. Although S.O.L.O. Benefit Fund argues that the claim clearly "relates to" the ERISA plan, and therefore should be preempted, S.O.L.O. Benefit Fund has cited no case holding that a state-law libel claim is indeed preempted by ERISA. Federal decisions would indicate to the contrary. *See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 832–33 & n. 8, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (concluding that "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," all involve claims brought by non-ERISA entities, and "although obviously affecting and involving ERISA plans and their trustees," this type of lawsuit is not preempted, and citing a libel case brought by a doctor against an ERISA plan, based on the plan's publication that the doctor overtreated patients, overcharged for services, and altered claims to bring them within policy coverage, *Abofreka v. Alston Tobacco Co.,* 288 S.C. 122, 341 S.E.2d 622 (1986), as an example of a tort claim not preempted by ERISA); *American Med. Ass'n v. United Healthcare Corp.,* 2001 WL 863561, *15 (S.D.N.Y. July 31, 2001) (holding that the plaintiff's state-law libel claim was not preempted by ERISA, citing *Mackey*); *see also Gulf South Med. & Surgical Inst. v. Aetna Life Ins. Co.,* 39 F.3d 520, 522, n. 6 (5th Cir.1994) (bypassing the question of ERISA preemption of a libel claim, because the allegedly defamatory communications were "clearly" qualifiedly privileged), *cert. denied,* 516 U.S. 814, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995). Thus, S.O.L.O. Benefit Fund's "preemption" defense lacks even sufficient "facial" merit to weigh in favor of setting aside the default judgment on the libel claim.

### 3. *Summary*

Upon consideration of "all relevant circumstances," *see id.,* the court concludes that S.O.L.O. Benefit Fund is not entitled to an order setting aside the default judgment entered against it on the Rule 60(b)(1) grounds of "excusable neglect" or "surprise." *See* FED.R.CIV.P. 60(b)(1). Neither the default judgment nor the levy against S.O.L.O. Benefit Fund's accounts five months later could properly be characterized as causing "surprise" in light of the numerous warnings received by S.O.L.O. Benefit Fund and its purported counsel that default judgment was imminent and had ultimately been entered. Nor was entry of default judgment the result of "excusable neglect." If the attorney identified by the defendant was indeed sup-

posed to be handling the matter, counsel's neglect was *not* excusable, and her conduct is properly imputed to the client under Eighth Circuit precedent, including *Inman*. The defendant's own conduct was also inexcusably dilatory, whether or not the defendant had, or believed that it had, retained counsel to handle this lawsuit. Finally, other factors pertinent to the analysis do not weigh sufficiently strongly in favor of setting aside the default judgment. Therefore, S.O.L.O. Benefit Fund's motion to set aside the default judgment, in its entirety, pursuant to Rule 60(b)(1) will be denied.

## B. Relief Pursuant To Rule 60(b)(6)

Next, S.O.L.O. Benefit Fund argues that the default judgment should be set aside pursuant to Rule 60(b)(6), because the excessive punitive damages award of $2.5 million, based on an award of only $50,000 in actual damages for emotional distress on the libel claim, constitutes "exceptional circumstances." At the hearing, counsel for S.O.L.O. Benefit Fund conceded that this ground for relief might permit the court to vacate only the amount of the punitive damages award, or both the liability and amount determinations as to punitive damages, but did not necessarily require the court to vacate any other part of its judgment regarding the libel claim or ERISA claim. In support of its argument to set aside the default judgment regarding punitive damages, S.O.L.O. Benefit Fund relies primarily on *Watkins v. Lundell*, 169 F.3d 540 (8th Cir.), *cert. denied*, 528 U.S. 928, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999).

 As the Eighth Circuit Court of Appeals explained in *Watkins*, "A Rule 60(b)(6) motion, made within a 'reasonable time,' can provide relief from a judgment, including a default judgment, for 'any other reason justifying relief from the operation of the judgment,' Fed.R.Civ.P. 60(b)(6), thus allowing a district court to inject equity and revive an otherwise lifeless claim." *Watkins*, 169 F.3d at 544. "What constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion." *Id.* As to reasons for relief, the court explained, " 'Relief under Rule 60(b) is an extraordinary remedy,' *Nucor [Corp. v. Nebraska Pub. Power Dist.]*, 999 F.2d [372,] 374 [(8th Cir.1993)], since exceptional circumstances must exist to justify intrusion into the sanctity of a final judgment." *Id.*

### 1. Relief sought within a "reasonable time"

S.O.L.O. Benefit Fund contends that it has sought relief from the default judgment within a "reasonable time," because only five months have passed since the judgment was entered. It contends further that, because relief must be sought within one year under subsections (1), (2), and (3) of Rule 60(b), a motion under any other section of Rule 60(b) made within one year is also reasonable. The court does not agree that the "reasonable time" calculation is necessarily that simple.

First, as the Eighth Circuit Court of Appeals explained in *Watkins*, "[w]hat constitutes a reasonable time [under Rule 60(b)(6) ] is dependent on the particular facts of the case in question," not upon a time limit specified only for other provisions of Rule 60(b). Second, although S.O.L.O. Benefit Fund contends that it only learned that the default judgment had not been set aside, as counsel represented it had been after Count II of Murray's Complaint was dismissed without prejudice, when its accounts were frozen, the court has suggested that S.O.L.O. Benefit Fund's delay in discovering counsel's misrepresentation about the status of the default judgment is not entirely blameless.

This is not a situation in which the defendant simply did not know about the default judgment, but a situation in which the defendant was pleased to bury its head in the sand for five months after accepting a representation of counsel concerning the status of the default judgment that should have been viewed very skeptically under the circumstances, even by an unsophisticated litigant. Moreover, if it is appropriate to impute to the client the negligence of the attorney under Rule 60(b)(1), it is not readily apparent why it should be otherwise with Rule 60(b)(6). The fact that Rule 60(b)(6) provides a "catchall" ground for relief from a judgment does not necessarily mean that it permits more latitude in setting aside a default judgment. Here, counsel plainly knew or should have known that the dismissal of Count II, the class-action claim, without prejudice, did nothing to relieve S.O.L.O. Benefit Fund of the default judgment on Murray's individual ERISA and libel claims. Finally, the size of the default judgment should have added to the urgency and scope of the inquiry by S.O.L.O. Benefit Fund, to counsel or to some source other than counsel, about the continued viability of the default judgment.

■ Nevertheless, the court finds that S.O.L.O. Benefit Fund has asserted a Rule 60(b)(6) motion within a "reasonable time," but only because the five-month delay before the motion was filed is not plainly "unreasonable" in comparison to the one-year time limit specifically imposed upon motions under other provisions of Rule 60(b). It is reasonable to assume that imposition of a specific time limit on some, but not all, provisions of Rule 60(b) suggests that those provisions for which no specific time limit is set are not subject to as stringent time constraints.

### 2. Exceptional circumstances

In *Watkins*, as here, the defaulting defendant contended that relief was appro-priate under Rule 60(b)(6), because Iowa's requirements for punitive damages had not been met, and the punitive damages awarded in the case were excessive and unconstitutional. *See Watkins*, 169 F.3d at 544. As in *Watkins*, however, this court rejects S.O.L.O. Benefit Fund's invitation to revisit the factual findings upon which the punitive damages award was based under Iowa law. *See id.* at 544–45 ("If we were to revisit factual findings without some showing of exceptional circumstances, then Rule 60(b)(6) would be nothing more than an end-run around the entire judicial process."). It is not an extraordinary circumstance that the court made the determination that punitive damages should be awarded in the amount of $2.5 million on the basis of only one party's arguments concerning what the evidence showed, for that is the very nature of any determination of damages that are not for a sum certain on a default judgment.

■ Therefore, the court turns to the question of whether the award of $2.5 million in punitive damages was "excessive," where only $50,000 in actual damages were awarded on the pertinent claim, the libel claim. In *Watkins*, the Eighth Circuit Court of Appeals agreed with the district court that, because the punitive damages in the amount of $3,617,500 were awarded on default and reviewed only by the judge who entered the judgment, and because of the equitable nature of the inquiry under Rule 60(b), exceptional circumstances existed to justify operation of Rule 60(b)(6). *See Watkins*, 169 F.3d at 545. The court likewise agrees that the award of $2.5 million in punitive damages presents exceptional circumstances in this case.

■ Thus, the question is whether the punitive damages award is "excessive and unconstitutional." *Id.* The pertinent factors for such review are "(1) the degree of

reprehensibility of the parties' actions; (2) the ratio between the actual harm inflicted and the punitive damages; and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases." *Id.* (citing *BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). As to "reprehensibility," the court is satisfied that the finding that punitive damages *may* be awarded, *i.e.,* the determination of "liability for punitive damages, in this case was appropriate, and that the record presented at the default judgment hearing suffices to justify the amount of punitive damages awarded, even though S.O.L.O." Benefit Fund, belatedly, attempts to put a different gloss on the circumstances. Therefore, if the punitive damages are unconstitutionally excessive in this case, such that setting aside the punitive damages portion of the default judgment is appropriate, it must be on the basis of the remaining factors in the analysis, and would pertain only to the *amount* of those damages.

In light of the determination that the punitive damages award in *Watkins,* in the ratio of 14.89–to–1, was unconstitutionally excessive, *see id.* at 546, the ratio of 50–to–1 in the present case ($2.5 million punitive damages to $50,000 actual damages on the libel claim) must give the court pause. Moreover, in *Watkins,* the actual damages were almost five times greater than they are in this case, indicating significantly greater actual injury to start with. *Id.* (actual damages were $235,000). The court's concerns are reinforced by the conclusion of the Supreme Court in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), that a ratio of only 4–to–1 was "close to the line" of constitutional impropriety in a case involving fraud, which, like libel, is an intentional tort. *See Haslip,* 499 U.S. at 23, 111 S.Ct. 1032. Similarly, in *Watkins,* although the Eighth Circuit

Court of Appeals found that the defendant's conduct justified punitive damages, the court was "not persuaded that the award should exceed a 4–to–1 ratio ($940,-000) in this case." *Watkins,* 169 F.3d at 547.

■■■ Therefore, the court concludes that the appropriate course is to set aside only that part of the default judgment awarding $2.5 million in punitive damages on Murray's libel claim, but not the determination that punitive damages in some amount are justified under the circumstances. *See id.* (finding that the amount of punitive damages, not the determination of liability for punitive damages, should be set aside). Moreover, in *Watkins,* the court held that "the district court abused its discretion by failing to exercise its power under Rule 60(b)(6) to set aside the default judgment *and reduce the punitive damages award against [the defaulting defendant],*" and remanded the case to the district court "for proceedings consistent with this opinion." *Id.* (emphasis added). As this court reads *Watkins,* upon setting aside the default judgment awarding an excessive amount of punitive damages, this court is authorized to reduce the award to a constitutionally acceptable amount, and direct the entry of judgment accordingly. Therefore, the court will set aside that portion of the default judgment awarding $2.5 million in punitive damages on Murray's libel claim, and direct the entry of judgment awarding instead $200,000 in punitive damages, an amount which is in a constitutional 4–to–1 ratio to the $50,000 award of actual damages on the libel claim. *See Haslip,* 499 U.S. at 23, 111 S.Ct. 1032; *Watkins,* 169 F.3d at 547. To this limited extent, S.O.L.O. Benefit Fund's motion to set aside the default judgment will be granted.

## C. Relief Pursuant To Rule 60(b)(4)

▮▮ Almost in passing, S.O.L.O. Benefit Fund also asserts in its supplement to its motion that the default judgment should be set aside pursuant to Rule 60(b)(4), because the court lacked personal jurisdiction over the Fund. Rule 60(b)(4) permits the court to set aside a default judgment where "the judgment is void." FED.R.CIV.P. 60(b)(4). S.O.L.O. Benefit Fund contends that a judgment is void, if the court lacks personal jurisdiction over the defendant, citing *Printed Media Services, Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir.1993). The court does not disagree with that proposition. S.O.L.O. Benefit Fund argues that personal jurisdiction is lacking here, because its only contact with this forum is that a potential beneficiary resides here. In support of this proposition, S.O.L.O. Benefit Fund cites *Burkhart v. Medserv Corp.*, 916 F.Supp. 919, 922–23 (W.D.Ark.1996). This argument requires further analysis.

> In *Burkhart*, the court found as follows:
> From what is before the court, the sole connection the administrator [of an ERISA disability plan] has with Arkansas is that a potential beneficiary, the plaintiff, resides in Arkansas. The court is given no other information regarding any contacts Medserv had with this state. We do not know if the plaintiff resided here when he made a claim for benefits and when benefits were denied. We do not know if the plaintiff performed any work for Medserv in this district or received any benefits under the terms of the plan after he resided in this district.
>
> In short, as Medserv points out, the sole connection with this district appears to be the fact that plaintiff, a potential beneficiary under the plan, resided here when the complaint was filed. This is simply insufficient. Plaintiff has advanced nothing to show that Medserv

has had any contacts with the district. While the presence of a beneficiary within the forum has been held sufficient to support personal jurisdiction over a plan, the facts of such cases indicate the plan was administered within the forum district and/or the beneficiary performed their work or earned pension credits within the forum district. *See, e.g., Ransom v. Administrative Comm.*, 820 F.Supp. 1429 (N.D.Ga.1993).

*Burkhart*, 916 F.Supp. at 922–23.

The circumstances here are readily distinguishable from those presented in *Burkhart*, and indeed, fall squarely within the circumstances identified in *Burkhart* as *sufficient* to establish personal jurisdiction. Unlike the situation in *Burkhart*, Murray *did* reside in this district when he made a claim for benefits and when benefits were denied, and he also received benefits under the terms of the plan while residing in this district. *Id.* at 922. Murray also performed qualifying work in this district and earned benefit credits within this forum. *Id.* at 922–23. Also, here, S.O.L.O. Benefit Fund contacted Murray's doctor in this district and obtained his medical records from this district, in addition to accepting Murray's contributions to the Fund or plan premiums from this district. Therefore, the default judgment in this case is not void for lack of personal jurisdiction, and will not be set aside pursuant to Rule 60(b)(4).

## D. Stay Of Execution

In its October 4, 2001, motion, S.O.L.O. Benefit Fund also sought a stay of execution on its two bank accounts pursuant to Rule 62(b) of the Federal Rules of Civil Procedure "until such time as the Court has an opportunity to rule upon Defendant's Motion to Set Aside the Default Judgment entered on May 11, 2001." Defendant's Motion To Set Aside, ¶ 31; *see*

*also id.* Prayer ¶ 1.[4] Because this opinion is a ruling on all parts of S.O.L.O. Benefit Fund's Rule 60(b) motion to set aside the default judgment, as supplemented, S.O.L.O. Benefit Fund's motion for a stay of execution pursuant to Rule 62(b) will be denied as moot. *See* FED.R.CIV.P. 62(b) ("In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a … motion for relief from a judgment or order made pursuant to Rule 60").[5]

### III. CONCLUSION

Upon a request for expedited hearing, but not with such haste as to preclude due consideration, the court finds that S.O.L.O. Benefit Fund's motion to set aside the default judgment should be granted only in part. The portions of S.O.L.O. Benefit Fund's motion to set aside the default judgment in its entirety, pursuant to Rule 60(b)(1), on the basis of "surprise" and "excusable neglect," and pursuant to Rule 60(b)(4), on the basis of lack of personal jurisdiction, are **denied.** However, that portion of S.O.L.O. Benefit Fund's motion to set aside the default judgment awarding punitive damages on Murray's state-law libel claim pursuant to Rule 60(b)(6), on the ground that the punitive damages are unconstitutionally excessive, is **granted** to the limited extent that the award of $2.5 million in punitive damages on Murray's libel claim is **vacated,** and **judgment shall instead enter awarding Murray $200,000 in punitive damages on his libel claim** for conduct directed specifically at the plaintiff pursuant to IOWA CODE § 668A.1.

S.O.L.O. Benefit Fund's motion for a stay of execution is **denied as moot.**

**IT IS SO ORDERED.**

---

4. The court ordered the entry of default judgment on May 11, 2001, but the default judgment was actually entered on May 15, 2001.

5. The amount of the undisturbed portion of the default judgment entered on May 15, 2001, exceeds the deposits in S.O.L.O. Benefit Fund's "frozen" bank accounts.