# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6085
_____

In re: Richard Burival, doing business     *
as Burival Brothers, a partnership;     *
Phillip Burival, also known as     *
Burival Brothers, a partnership;     *
Gary M. Burival, also known as     *
B & B Farms, also known as Burival     *
Farms; Joyce A. Burival, also known as     *
B&B Farms, also known as     *
Burival Farms,     *    Appeal from the United States
    *    Bankruptcy Court for the
     Debtors     *    District of Nebraska
    *
William L. Needler,     *
    *
     Objector - Appellant     *
    *
       v.     *
    *
Internal Revenue Service;     *
Nebraska Department of Revenue,     *
    *
     Claimants - Appellees     *
    *
Rick D. Lange,     *
    *
     Trustee - Appellee     *

_____

Submitted: May 3, 2011
Filed: June 10, 2011

_____

Before KRESSEL, Chief Judge, FEDERMAN and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

William L. Needler, the Debtors' attorney, as a holder of an administrative claim for his attorney fees in the case, appeals from the Bankruptcy Court's[1] Order denying his motion to reconsider an Order denying his Rule 60(b) motion. Those motions challenged the Bankruptcy Court's earlier Orders allowing the Trustee to pay federal and state capital gains and income taxes incurred in connection with the sale of the Debtors' property as a surcharge against the proceeds of the sale. For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

Gary and Joyce Burival and their sons, Richard and Phillip Burival, who were engaged in interrelated farming operations, filed Chapter 11 bankruptcy cases on November 29, 2007. The cases were administratively consolidated and are being jointly administered. William L. Needler, through his law firm, William L. Needler & Associates, Ltd., is the attorney for all of the Debtors.

On February 26, 2009, over the Debtors' objection, the Bankruptcy Court granted the request by several of the Debtors' creditors that a Chapter 11 Trustee be appointed pursuant to 11 U.S.C. § 1104(a), finding, *inter alia*, that the Debtors' management of the estate had resulted in continuing operating losses and hundreds of thousands of dollars of unpaid administrative expenses.[2] The Order approving the appointment of the Trustee provided, in relevant part:

---

[1] The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[2] *Order* (Doc. #996) (Feb. 26, 2009).

2

The parties involved in such an appointment should be aware that in light of the financial position of this estate, the Court will not authorize the appointment unless the application represents that all creditors secured by assets to be sold by the trustee have agreed that *the fees of the trustee and expenses of sale can be surcharged against the first proceeds of each sale.*[3]

No one appealed the orders authorizing the appointment of a Chapter 11 Trustee, nor did anyone object to the language regarding surcharge. Rick D. Lange was appointed as the Trustee.[4] The final Order appointing him provided that, subject to subsequent application and approval by the Court, the Trustee would be entitled to an administrative expense claim for all of his administrative expenses, and that such claim shall be paid out of the proceeds of the sale of real estate in which the Bank had a lien, "prior to the payment of the Bank's secured claim or any other claims or liens with regard to the real estate."[5]

On March 12, 2009, the Trustee filed a motion to sell, free and clear, the Debtors' real estate in Holt County, Nebraska.[6] That motion expressly provided that taxes, which were defined to include federal and state ordinary income tax and capital gains taxes, would be paid from the sale proceeds. It further provided that the property being auctioned would be surcharged to pay those items including the taxes, and that those items would "have priority over all liens, encumbrances, and claims of

---

[3] *Order* (Doc. # 996) at p. 4 (emphasis added).

[4] *See Order* (Doc. #1005) (March 2, 2009) (granting appointment on interim basis), and *Order*, Doc. #1034 (March 10, 2009) (final order appointing the Trustee).

[5] *Order* (Doc. #1034) at p. 2 (March 10, 2009).

[6] *Motion for Approval of Auction Sale and Surcharge* (Doc. #1040) (March 12, 2009).

3

every type and kind (secured, administrative, or otherwise)."[7]  The Debtors objected to the motion to sell, but solely on the ground that the motion did not provide for the treatment of their homestead exemption and provided no living expenses to the Debtors.[8]  The Trustee filed a similar motion, with the surcharge language, pertaining to the sale of the Debtors' crops.[9]

On March 26, 2009, the Bankruptcy Court entered an order approving the Trustee's motion to sell the real estate, and authorizing the Trustee to surcharge the sale proceeds for payment of federal and state ordinary income taxes and capital gains taxes as described in the motion.[10]  On April 10, 2009, the Court approved the sale of the crops, also with the surcharge.[11]  No one appealed from those Orders.

After selling the real estate and certain other property, the Trustee filed, on July 2, 2009, a detailed motion to distribute the sale proceeds.  The motion provided, in relevant part:

> Based upon available information, the Trustee allocated the net sale proceeds . . . before reserves for taxes and expenses as follows . . . .  The Trustee then deducted from this amount projected income taxes (including capital gains taxes) and a reserve.  The taxes deducted are the estimated amount attributable to the Gross Proceeds from the sale of the

---

[7]  *Id.* at ¶¶ 7 and 10.

[8]  *Debtor/Farmers' Response, Objection and Resistance to Trustee's Motion to Sell Real Property Free and Clear of Liens* (Doc. #1051) (March 19, 2009).

[9]  *Motion for Approval of Private Sales of Crops Free and Clear of Liens, and for Surcharge* (Doc. #1053) (March 20, 2009).

[10]  *Order Approving Trustee's Motion for Approval of Public Auction Sale Free and Clear of Liens and for Surcharge* (Doc. #1067) (March 26, 2009).

[11]  Text Order (Doc. #1096) (April 10, 2009).

Real Estate and Associated Property; and the reserve is principally an allowance for funds in the event taxes are higher than projected and for payment of administrative expenses . . . . At present it is anticipated that there will be excess reserve funds available for further distributions to secured claims (although there can be no assurances of such), which excess will be determined in due course after tax liabilities and administrative costs are finalized, at which time such excess can be distributed per a subsequent motion and Court Order.[12]

The Debtors filed a response to the motion to distribute, requesting additional detail, including on the payment of taxes.[13]  A hearing was set for August 18, 2009.

At this point, Needler belatedly realized that the estate was not going to be left with funds sufficient to pay his fees and other administrative expenses.  Therefore, on August 15, 2009, Needler filed, on his own behalf, a motion to vacate the portions of the prior Orders allowing the surcharge of taxes on the sale of real estate and crops, claiming that the surcharge violated the Bankruptcy Code, and that all administrative claimants must be treated alike.[14]  He asserted that the Orders were "entered through 'mistake' and 'inadvertence'"[15] and should be vacated pursuant to Rule 60(b).[16]

_____

[12]  *Motion to Approve Distribution of Sale Proceeds* (Doc. # 1214) at ¶ 4 (July 2, 2009).

[13]  *Debtor/Farmers' Response, Objection and Resistance to Trustee's Motion to Approve Distribution of Sale Proceeds* (Doc. #1227) (July 21, 2009).

[14]  *Motion of Administrative Claimant William L. Needler to Partially Revoke and Vacate Prior Orders as to the Chapter 11 Trustee's Surcharge of Real Estate and Crop Proceeds for Payment of Taxes as a Result of These Sales* (Doc. #1269) at ¶¶ 7, 9, 18 (August 15, 2009).

[15]  *Id.* at ¶ 17.

[16]  Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

On August 18, 2009, the Court entered an Order approving the distribution of real estate sale proceeds as requested in the July 2, 2009 motion, "without prejudice to . . . any party in interest objecting to or otherwise contesting any surcharge and/or proposed payment by the Trustee to taxing authorities for federal and state income taxes (including but not limited to capital gains taxes)."[17]

On August 31, 2009, the Trustee objected to Needler's motion to vacate, stating:

> The Trustee made the surcharge requests in the Sale Motions because it was the Trustee's understanding that the actively involved creditors in these cases desired to have the Trustee promptly liquidate the real estate [and associated] property and crops rather than abandon them, and because the Chapter 11 Trustee Handbook provides in part that: " . . . the Trustee may be held personally liable when an estate does not have sufficient funds to pay the taxes due from the sale of the estate assets." The Trustee proceeded after consultation with the Office of the United States Trustee.[18]

The Court entered an Order deferring its ruling on Needler's motion until the taxing authorities had had an opportunity to respond,[19] which they did on December 31, 2009.[20]

---

[17] *Order* (Doc. #1275) (August 18, 2009).

[18] *Resistance to Motion to Vacate* (Doc. #1283) (August 31, 2009).

[19] Text Order (Doc. #1332) (October 15, 2009).

[20] *United States' Resistance to Motion to Vacate and Partially Revoke Prior Orders No. 1061 and 1071 as to the Chapter 11 Trustee's Surcharge of Real Estate and Crop Proceeds for Payment of Taxes as a Result of These Sales* (Doc. #1357) (Dec. 31, 2009), and *Resistance by Nebraska Department of Revenue to Administrative Claimant's Motion to Vacate* (Doc. #1359) (Dec. 31, 2009).

On July 28, 2010, the Trustee again requested authority to distribute funds, once again requesting an Order authorizing the surcharge.[21]

On September 8, 2010, the Bankruptcy Court denied Needler's motion to vacate the surcharge.[22] On September 15, 2010, the Bankruptcy Court entered an Order granting the Trustee's motion to distribute funds, stating: "In connection with the distributions the principal amount payments for the 2009 state and federal taxes shall be paid by surcharging the funds on hand, with these payments per the Motion to be in full and complete satisfaction of the principal amounts of the 2009 tax claims."[23]

On September 18, 2010, Needler filed a motion to reconsider the Court's September 8 Order denying the vacation of the surcharge and approving additional distribution of funds.[24] On November 9, 2010, Needler filed an affidavit in support of his motion to reconsider, in which he accused the Trustee of misleading the creditors and the Court and claimed that the Trustee had continually assured the Administrative Claimants, the Court, and others that there was plenty of money and that they need not worry about the IRS claims being ahead of them.[25] The Trustee

---

[21] *Motion to Approve Additional Distributions of Funds and Treatment of Certain Claims* (Doc. #1500) (July 28, 2010).

[22] Text Order (Doc. #1555) (September 8, 2010).

[23] *Order* (Doc. # 1558) at ¶ 2 (September 15, 2010).

[24] *Joint Motion of Various Administrative Claimants . . . to Reconsider, Vacate, Amend and Modify the Court's Order of 9/8/2010 at Docket #1555 Which Denied an Administrative Claimants' the [sic] Federal Rule 60(b) Motion and This Orders [sic] Failure to Address Other Hearing Issues* (Doc. #1563) (Sept. 18, 2010).

[25] *Sworn Declaration of William L. Needler . . . in Support of his Amended Joint Motion to Reconsider, Vacate, Amend and Modify this Court's Orders of 9-8-2010 at Docket #1555 Which Denied an Administrative Claimant's the [sic]*

7

asserted, and still asserts, that this statement was false. He maintains that he never made any such assurances that administrative claims would be paid.

On November 10, 2010, the Court denied Needler's motion to reconsider.[26] Needler appeals the Order denying the motion to reconsider.

## DISCUSSION

Rule 60(b) provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason that justifies relief."[27]

We review the denial of a Rule 60(b) motion for abuse of discretion.[28] "Reversal of a district court's denial of a Rule 60(b) motion is rare because Rule 60(b) authorizes relief in only the most exceptional of cases."[29]

---

*Federal Rule 60(b) Motion and Approved the Payment of Priority Surcharge Taxes and the Court's Order Dated 9/15/2010 at Docket #1558* (Doc. #1596) (Nov. 9, 2010).

[26] Text Order (Doc. #1599) (Nov. 10, 2010).

[27] Fed. R. Civ. P. 60(b)(1), (2), and (6), made applicable here by Fed. R. Bankr. P. 9024.

[28] *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005).

[29] *Id.* (citation omitted).

8

Although Needler argues here that the Bankruptcy Court erred in ordering the Debtors' property to be liquidated in the first place, and then in allowing the taxing authorities to be paid first from the proceeds, "[a]n appeal from the denial of a Rule 60(b) motion does not raise the underlying judgment for our review but only the question of whether the district court abused its discretion in ruling on the Rule 60(b) motion."[30] As a result, we will not consider whether the Court erred in allowing the liquidation or in granting the surcharge.[31]

Needler's Motion to Vacate implicated Rule 60(b)(1), which permits a court to grant relief from a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Needler says that he failed to object to the motions seeking the surcharge, and to appeal from the surcharge Orders, because he did not understand the ramifications of allowing the surcharge. He offers two reasons for that lack of understanding. First, he says that he did not realize at the time that the Bankruptcy Code does not authorize such a surcharge or superpriority. We do not decide here whether the Code authorizes such a surcharge because, even if it does not, in the Eighth Circuit, a mistake of law does not constitute excusable neglect under Rule

---

[30] *Id.*

[31] A question has been raised as to whether the payment of the taxes was actually a surcharge against the sale proceeds, or the grant of a superpriority administrative expense status. It would appear from a Stipulation filed by the Trustee on March 19, 2009, that it was more akin to a surcharge because the taxes were to be paid even before the secured creditors were paid. *Stipulation* (Doc. #1049) (March 19, 2009). However, because we are not deciding the propriety of the grant of the surcharge orders themselves, that distinction is not important to this decision.

9

60(b)(1).[32]  In other words, Rule 60(b) cannot be used as a substitute for a timely appeal from the Orders authorizing the surcharge.[33]

Second, Needler says he thought his client's property would bring a price that would pay all of the administrative claims in full.  In other words, while Mr. Lange only agreed to take the appointment as Trustee and sell the property if the Court orders protected him in the event the estate turned out to be insolvent, Needler should be allowed to undo those orders and collect his fees even though he – an experienced bankruptcy attorney[34] – did not consider the possibility that his client's estate might turn out to be insolvent.  The fact that the Trustee repeatedly requested the surcharge placed  squarely on the table the question of whether the sale of the property would bring enough to pay the taxes along with all of the other administrative claims.  In other words, by requesting the surcharge, the Trustee was obviously concerned about the administrative solvency of the case. Clearly, that was an issue which Needler should have also considered at the time.  The fact that he neglected to do so is not the type of exceptional circumstance that would warrant granting a Rule 60(b) motion.[35]

> The determination as to whether neglect is excusable is an equitable one, taking into account all relevant circumstances surrounding the party's omission.  However, relief under Rule 60(b) is an extraordinary remedy.

---

[32]  *Noah v. Bond Cold Storage*, 408 F.3d at 1045.

[33]  *In re Yukon Energy Corp.*, 227 B.R. 150, 152 (B.A.P. 8th Cir. 1998) (citing *Kocher v. Dow Chemical*, 132 F.3d 1225, 1228 (8th Cir.1997)).

[34]  *See Application to Employ Attorneys* (Doc. #5) (Nov. 29, 2007) ("William L. Needler and the firm of William L. Needler and Associates, have considerable experience in Chapter 11 proceedings and especially Farmer/Debtor Chapter 11's and are well qualified to provide representation in these proceedings.").

[35]  *Noah v. Bond Cold Storage*, 408 F.3d at 1045 ("It is generally held that 'excusable neglect' under Rule 60(b) does not include ignorance or carelessness on the part of an attorney.").

Factors to consider in this determination include (1) the danger of prejudice to the [other parties]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[36]

Here, the prejudice to the other parties and potential impact on the bankruptcy case are paramount. It was plain, even before the Trustee was appointed, that the parties were concerned about the payment of the taxes incurred through the sale. Initially, the Trustee requested the surcharge in part because he believed he might be exposed to personal liability for the taxes if they were not paid from the sale proceeds. Needler now asserts that that was incorrect – the Trustee was never exposed to personal liability. Had Needler been able to so demonstrate at the time the orders were originally entered, and before the parties relied on them, that might have been an argument for the Court to consider in determining whether to give the Trustee authority to pay those taxes first. In any event, the Trustee, as well as the taxing authorities and other parties, relied on the surcharge Orders when he proceeded to sell the property. As the Bankruptcy Court pointed out at the hearing on this matter, since the property has been sold in reliance on the surcharge Orders, the horse is out of the barn, so to speak, and neither the Trustee, nor the taxing authorities, should have to bear the consequences of Needler's failure to understand the ramifications of the surcharge.

Next, Needler asserts that the surcharge Orders should be vacated due to newly discovered evidence under Rule 60(b)(2). Again, the "newly discovered evidence" he points to is the fact that the sale of the property did not turn out to bring a price sufficient to pay all of the administrative claims. We question whether this constitutes "evidence," as that term is contemplated by the Rule in the first place. "The only

---

[36] *In re President Casinos, Inc.*, 397 B.R. 468, 473 (B.A. P. 8th Cir. 2008) (citing *Pioneer Investment Servs. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 381, 113 S.Ct. 1489, 1490-91, 123 L.Ed.2d 74 (1993); additional citations omitted).

evidence that qualifies as 'newly discovered' evidence within the meaning of the rule justifying setting the judgment aside is evidence of facts that were in existence at the time of the original trial or that relate directly to the facts that were tried."[37] The sale price was a fact which was not in existence at the time the surcharge Orders were entered. When a bankruptcy court authorizes the future sale of property in a context such as this, no one can be certain what the sale price will be. That is precisely why parties ask for protective orders such as a minimum price or, as in this instance, a surcharge to pay taxes. As a result, the "newly discovered evidence" of the sale price did not warrant relief from the surcharge Orders.

Finally, Rule 60(b)(6) provides that the Court may relieve a party from an order for the catch-all "any other reason that justifies relief." The Eighth Circuit has said that this provision allows a court to "inject equity and revive an otherwise lifeless claim."[38] However, a motion under Rule 60(b)(6) is only granted in rare circumstances, and only if brought within a reasonable time.[39] "What constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion."[40] While Needler may have filed his Motion to Vacate soon after realizing he would not be paid all of his attorney's fees, the sales had already occurred in reliance on the surcharge. Again, for that reason, the Court did not abuse its discretion in concluding that Needler was not entitled to the extraordinary relief he requested.

---

[37] 12 Moore's Federal Practice 3d ¶ 60.42[3][a].

[38] *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999).

[39] Fed. R. Civ. P. 60(c).

[40] *Watkins v. Lundell*, 169 F.3d at 544.

For the foregoing reasons, the Bankruptcy Court did not err in denying Needler's motion to vacate the surcharge Orders. The Bankruptcy Court's Orders are, therefore AFFIRMED.

---